RECORD NO. 15-1442

*In The*

# United States Court of Appeals

*For The Fourth Circuit*

## JEFFEREY L. VANDERHALL,
## as Assignee of Maurice Wilson and Priscilla J Ford,

*Plaintiff – Appellant,*

**v.**

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT FLORENCE**

_____

**BRIEF OF APPELLANT**

_____

| | |
|---|---|
| **William P. Hatfield** | **Robert N. Hill** |
| **HATFIELD TEMPLE, LLP** | **LAW OFFICE OF ROBERT HILL** |
| **Post Office Box 1770** | **Post Office Box 1323** |
| **Florence, South Carolina  29503** | **Lexington, South Carolina  29071** |
| **(843) 662-5000** | **(803) 520-4370** |
| | |
| *Counsel for Appellant* | *Counsel for Appellant* |

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1442__        Caption: _Vanderhall vs. State Farm_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Jefferey L. Vanderhall, as Assignee of Maurice Wilson and Priscilla J. Ford_____
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                           ☐ YES ☑ NO
      If yes, identify all such owners:



10/28/2013 SCC                           - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/William P. Hatfield _____        Date: _____4/29/15_____

Counsel for: Appellant _____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____April 29, 2015____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Robert N. Hill                          Charles R. Norris
Law Office of Robert Hill               Nelson Mullins Riley & Scarborough
P.O. Box 132                            151 Meeting Street, 6th Floor
Lexington, SC 29071                     Charleston, SC 29401
attorneyhill@twc.com                    charles.norris@nelsonmullins.com

s/William P. Hatfield _____        _____4/29/15_____
          (signature)                                (date)

- 2 -

# Table of Contents

**Page**

Table of Authorities ................................................................. iii

Jurisdictional Statement .............................................................1

Statement of the Issues...............................................................1

Statement of the Case.................................................................2

Summary of Argument ...............................................................8

Standard of Review ...................................................................8

Argument....................................................................................9

    I.    The jury must determine whether the offer was authorized.................9

        1.    Vanderhall's mild retardation is not incapacitating...................9

        2.    A jury could find that Vanderhall created an implied
            agency ................................................................................12

        3.    A jury could find that Vanderhall ratified his attorney's
            efforts ................................................................................15

    II.    The jury must determine if State Farm acted unreasonably or in
        bad faith.............................................................................17

        1.    The jury could find that State Farm put its interests first .........18

        2.    The jury could fault State Farm for not consulting its
            insureds ..............................................................................21

Conclusion ................................................................................22

Request for Oral Argument.........................................................23

Certificate of Compliance

Certificate of Filing and Service

# Table of Authorities

**Page(s)**

## Cases

*Am. Fire & Cas. Co. v. Johnson*,
　　332 S.C. 307, 504 S.E.2d 356 (Ct. App. 1998) ..............................................21

*Bankers Trust of South Carolina v. Bruce*,
　　283 S.C. 408, 323 S.E.2d 523 (Ct. App. 1984) ............................................13

*Citizens Sav. Bank, F.S.B. v. Verex Assur., Inc.*,
　　883 F.2d 299 (4th Cir. 1989) ........................................................................13

*City of Greenville v. Washington Am. League Baseball Club*,
　　205 S.C. 495, 32 S.E.2d 777 (1945)..............................................................13

*Fowler v. Hunt*,
　　388 S.C. 355, 697 S.E.2d 531 (2010)............................................................12

*Foxworth v. Murchison Nat'l Bank*,
　　136 S.C. 458, 134 S.E. 428 (1926)...........................................................15, 16

*In re Nightingale's Estate*,
　　182 S.C. 527, 189 S.E. 890 (1937)................................................................11

*Jacobs v. N.C. Admin. Office of the Courts*,
　　780 F.3d 562 (4th Cir. 2015) .....................................................................8, 22

*Miller v. Premier Corp.*,
　　608 F.2d 973 (4th Cir. 1979) ........................................................................16

*Motley v. Williams*,
　　374 S.C. 107, 647 S.E.2d 244 (Ct. App. 2007) ............................................17

*Nichols v. State Farm Mut. Auto. Ins. Co.*,
　　279 S.C. 336, 306 S.E.2d 616 (1983)............................................................17

*Palmer v. Littz Mut. Ins. Co.*,
  113 F. Supp. 857 (D.S.C. 1953) ...................................................................16

*Salve Regina College v. Russell*,
  499 U.S. 225 (1991)...........................................................................................8

*Smith v. Gilchrist*,
  749 F.3d 302 (4th Cir. 2014) ............................................................................8

*South Carolina Dep't of Social Services v. McDow*,
  276 S.C. 509, 280 S.E.2d 208 (1981)............................................................10

*South Carolina Federal Credit Union v. Higgins*,
  394 S.C. 189, 714 S.E.2d 550 (2011)............................................................11

*State Farm Fire and Cas. Co. v. Barton*,
  897 F.2d 729 (4th Cir. 1990) ..........................................................................17

*Trepanier v. Bankers Life and Cas. Co.*,
  167 Vt. 590, 706 A.2d 943 (1997)..................................................................16

*Tyger River Pine Co. v. Maryland Cas. Co.*,
  170 S.C. 286, 170 S.E.2d 346 (1933).......................................................*passim*

*United States v. Manny*,
  645 F.2d 163 (2d Cir. 1981) ...........................................................................16

*Varnadore v. Nationwide Mut. Ins. Co.*,
  289 S.C. 155, 345 S.E.2d 711 (1986)............................................................20

## Statutes

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1332 ...................................................................................................1

28 U.S.C. § 1441 ...................................................................................................1

42 U.S.C. § 1395y(b)(2)(A)(ii) ...........................................................................18

42 U.S.C. §§ 1395y(b)(2)(B)(ii)-(iii) .........................................................18

S.C. Code Ann. § 38-59-20(2-5, 8) ...........................................................17

**Rules**

Ethical Rule 1.14, Rule 407, SCACR ......................................................10

Fed. R. Civ. P. 9(a)(2) ...............................................................................12

Fed. R. Evid. 407 ........................................................................................4

**Regulations**

42 C.F.R. § 411.11 .....................................................................................18

42 C.F.R. § 411.24(e) ................................................................................18

42 C.F.R. § 411.24(i)(1) ............................................................................18

**Other Authority**

*Restatement (Third) of Agency* § 3.08 (1) ..........................................13, 14

## Jurisdictional Statement

Jeffrey Vanderhall, a South Carolina citizen, brought a $7 million claim against State Farm Mutual Automobile Insurance Company in the South Carolina Court of Common Pleas. JA 14-21. State Farm, incorporated in Illinois and with its principal place of business in Illinois, removed the case based on the parties' diversity of citizenship. JA 10-11. The district court had jurisdiction under § 28 U.S.C. 1332 and § 28 U.S.C. 1441.

On March 30, 2015, the district court granted State Farm summary judgment on all of Vanderhall's claims and separately entered a judgment dismissing the case with prejudice. JA 468-477. On April 23, 2015, Vanderhall timely appealed the final order. JA 478. This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

1.  Would South Carolina law ever imply an agency between a son and his mother when she hires an attorney for him during his temporary coma?

    a. If so, could a jury find that Vanderhall's attorney-client relationship began when his mother hired an attorney for him?

    b. If not, could a jury find that Vanderhall later ratified his attorney-client relationship and his attorney's efforts to settle his tort claim?

1

2.  Vanderhall's experts opine that State Farm acted unreasonably and in bad faith when it countered a settlement offer with conditions that only protected State Farm and without consulting its insureds. State Farm's witnesses testified that State Farm does not know why it added the conditions and that it no longer adds these conditions in policy-limit cases. Does this create a jury issue on whether State Farm rejected the offer unreasonably and in bad faith?

## Statement of the Case

Vanderhall was born with slight brain damage, entitling him to Social Security benefits for his mild retardation. He is illiterate, and has always lived at home with his mother Teresa. JA 301 ll.14-22, 302 ll.4-6, 302 ll.11-15, 303 ll.9-10, 303 l.23 - 304 l.5, 305 ll.9-11, 325 ll.6-7, 331 ll.19-21. Though Teresa lacks an express appointment, she has always acted as Vanderhall's guardian and has always handled his finances. JA 302 ll.21-23, 310 l.20 - 311 l.13, 325 l.22 - 326 l.12, 331 ll.22-23. He trusts her decisions for him and that she acts in his best interests. JA 331 l.24 - 332 l.8.

Despite the mild retardation, Vanderhall can make important decisions for himself. JA 302 ll.7-10. There is no contrary evidence in the record, and no suggestion that his competency has been adjudicated. Before the car crash, he had been employed with the same employer for seven years. JA 304 ll.19-22.

On August 21, 2011, Maurice Wilson crashed his grandmother Priscilla Ford's truck into Vanderhall. JA 305 ll.17-23, 317 ll.7-9, 318 ll.3-5, 319 ll.8-11.[1] State Farm had $25,000 liability coverage on the truck. JA 321.

Vanderhall, then 23 years old, was permanently paralyzed. JA 302 ll.16-20, 312 ll.12-17. The crash also left him in a coma for about a week but ultimately did not worsen his mental condition. JA 305 ll.12-16, 306 ll.2-8. His actual damages are reasonably estimated at $7 million. JA 154-156.

Two days after the crash, while Vanderhall was still in a coma, his mother retained the Hatfield Temple law firm to represent him. The retainer was signed "GAL for Jeffrey" even though Teresa lacked a formal appointment. JA 268-270. That next day, the law firm wrote State Farm that it represented Vanderhall and gave State Farm one opportunity to settle for the policy limits in exchange for a covenant not to execute. JA 215-217. The offer's 10-day deadline gave State Farm sufficient time to respond. JA 343 l.21 - 344 l.3, 348 l.17 - 349 l.4. Within the deadline, State Farm confirmed coverage, liability, and that the claim exceeded the policy limits. JA 333 l.24 - 334 l.4, 335 l.20 - 336 l.3, 337 l.19 - 340 l.1.

Around August 28, 2011, Vanderhall regained consciousness. JA 302 ll.11-13, 306 ll.2-8. Days later, State Farm rejected the offer with a counteroffer. JA 45-47,

---

[1]The summary-judgment order misstates Mr. Wilson's name. He is Maurice Wilson, not Maurice Washington.

219, 470. It rejected the offer without discussing it with Wilson or Ford, without explaining to them that their personal assets were at risk, and without telling them that they could hire their own counsel. JA 351 l.5 - 352 l.7.

In formulating the rejection letter, State Farm's claims representative worked off a template with different, variable components. The representative selected the components that went into the letter and added language that, "This settlement is inclusive of all economic damages known and unknown, and any liens, assignments or statutory rights of recovery." JA 340 ll.2-23, 341 ll.5-16, 342 ll.14-20. He does not know why he added these conditions and never determined that Wilson or Ford needed protection from any liens or statutory rights of action.  JA 342 ll.14-25, 345 ll.16-18. State Farm no longer adds these conditions when settling policy-limit cases. JA 349 l.23 - 350 l.5, 353 l.24 - 354 l.12.[2]

After State Farm rejected the offer, Vanderhall and Teresa  discussed the accident and the issues about her hiring an attorney for him. JA 306 l.22 - 307 l.16. He told her that he wanted to sue. JA 315 ll.11-15. The counteroffer was then declined. JA 314 ll.8-14. Had State Farm instead delivered the policy limits and a

---

[2]State Farm moved to exclude this evidence as a subsequent remedial measure. Vanderhall responded that Rule 407, Fed.R.Evid., allows such evidence to impeach and as a basis for expert opinions. JA 7-8 (Entries 60, 71, 74). The court did not rule on this before it entered judgment. JA 7-8.

covenant not to execute by the deadline, it would have been accepted. JA 313 ll.15-18, 316 ll.6-9.

Vanderhall then sued Wilson and Ford around a month after he regained consciousness. JA 149-153. Vanderhall brought the suit in his name alone and relied on his mother and his attorney to help make litigation decisions on his behalf. JA 149-153, 330 ll.13-19. Describing his attorney, Vanderhall testified, "[H]e's a good lawyer, and I can — I can put my trust in him." JA 329 ll.3-5.

Vanderhall and counsel that State Farm hired for Wilson and Ford disputed whether State Farm's response accepted or rejected the offer. JA 43-49. During this dispute, Vanderhall never objected to State Farm including a future-damages term to protect Wilson and Ford. JA 94-99. He objected to the other terms on liens, assignments, and statutory rights of recovery. JA 95, 97. Unlike future damages, the lien and statutory-rights terms only protect State Farm. JA 71 ¶ 26, 83, 365 l.19 - 366 l.11, 367 ll.13-24, 372 ll.19 - 375 l.12; 392 ll.2-13, 393 ll.4-16. Vanderhall objected to State Farm requiring that he protect State Farm.

The state court ruled that State Farm rejected the offer by countering with these other terms. JA 43-49.

Vanderhall then litigated the tort suit for over a year before he settled with Wilson and Ford. They got a covenant not to execute against them in exchange for a $7 million confessed judgment and an assignment of their rights against State

Farm. JA 22-42. Vanderhall executed these documents in his name alone without court approval. JA 22-42. Nothing in the documents indicates that counsel that State Farm hired for Wilson and Ford thought that Vanderhall needed a guardian or court approval to settle. JA 22-42. State Farm later stipulated that the settlement was not collusive and that the $7 million amount is reasonable. JA 154-156.

Vanderhall used the assignment that he contracted for in his name alone to sue State Farm in his name alone, alleging that State Farm was liable for the excess judgment against Wilson and Ford because State Farm rejected the offer unreasonably and in bad faith. JA 14-21. State Farm's answer did not allege that Vanderhall lacked the capacity to sue. JA 52-56. It also defended with Vanderhall's contract not to execute against Wilson or Ford. JA 55 ¶ 30.

State Farm later moved for summary judgment and argued in part that Vanderhall's attorney lacked authority to make the offer. JA 182-183, 202-205. Vanderhall responded  that a jury could find that his mother was acting as his implied agent when she hired counsel for him or that he ratified the offer after he came out of the coma. JA 284, 290-292. State Farm replied, "It was entirely his option whether or not to ratify it." JA 408.

Vanderhall also opposed summary judgment with expert testimony. JA 285, 292-295. One expert, Stuart Setcavage, worked for State Farm from 1988 to 2012, rising through its ranks to ultimately become a State Farm Litigation Team

6

Manager for the last eight of his 24 years there. JA 88. A second expert, Louis

Fey, has been a licensed adjuster for over 33 years and was licensed in South

Carolina when he lived there. JA 380 ll.1-3, 381 ll.4-24. One or both experts opine

that State Farm rejected the offer unreasonably, in bad faith, and in breach of the

South Carolina Improper Claims Handling Act. JA 69-72, 78-84, 379 ll.10-13; 394

l.23 - 395 l.7. Rejecting the offer, they continued, eliminated Wilson's and Ford's

chance at a practical resolution. JA 81, 369 ll.1-6, 382 ll.1-7, 387 ll.10-14. Fey

added that insurance companies understand that countering a timed offer risks

losing the ability to settle for the policy limits. JA 69 ¶ 21.

State Farm never moved to exclude these opinions. JA 1-9.

The district court granted summary judgment. JA 468-476. The court first ruled

that Vanderhall's incapacity meant that his attorney lacked the authority to make

the offer. JA 471-473. In rendering this ruling, the court apparently failed to

consider whether Vanderhall later ratified his attorney's efforts. JA 284, 292, 468-

476. The court next agreed with Vanderhall that State Farm rejected the offer by

counteroffering yet ruled that the counteroffer had a reasonable basis. JA 470,

473-475. In rendering this ruling, the court did not address Vanderhall's experts.

JA 285, 292-295, 473-475. Vanderhall timely appealed. JA 478.

## Summary of Argument

The district court got Vanderhall's attorney-client relationship wrong because Vanderhall is capable of contracting and created an implied agency that survived his temporary coma or later ratified his attorney's efforts. The settlement offer was authorized either way, obligating State Farm to act reasonably and in good faith. The jury could also find that State Farm breached this duty by rejecting the offer with conditions that protected only it and without consulting its insureds. So summary judgment must be reversed and the case remanded for the jury to resolve these factual disputes.

## Standard of Review

*De novo* review applies to all the issues presented. This Court reviews *de novo* the district court's view of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991). Summary-judgment orders are also reviewed *de novo,* with this Court applying the same standards applicable in the district court. *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014). These standards require courts to consider all the evidence in the record, and view it in a light most favorable to the nonmovant, without weighing evidence or judging credibility. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-569 (4th Cir. 2015).

# Argument

## I. The jury must determine whether the offer was authorized.

State Farm rejected the offer from Vanderhall's attorney so that it could add terms, not because its opposing counsel lacked authority to settle. JA 43-49, 470. State Farm did not attack Vanderhall's attorney-client relationship until it moved for summary judgment years after it rejected the offer. JA 182-183, 202-205, 219. The district court accepted the after-the-fact attack and ruled that Vanderhall's incapacity prevented a normal attorney-client relationship. JA 471-473. But it is unclear what the court considered incapacitating. Part of the court's discussion points to Vanderhall's mild retardation. Other parts suggest that the court just got the time line wrong on when Vanderhall came out of his coma. Either way, the court erred. This error was compounded when the court apparently failed to consider the joined issue over whether Vanderhall ratified the offer and thus authorized it retroactively. JA 284, 292, 407-408.

### 1. Vanderhall's mild retardation is not incapacitating.

Part of the summary-judgment order wrongly suggests that Vanderhall's counsel acted unethically by not getting Vanderhall a guardian ad litem and court approval to settle. JA 471-473. But Vanderhall came out of his temporary coma about a month before he sued Wilson and Ford, well over a year before he settled

with them, and well over two years before he sued State Farm. JA 14-42, 149-153, 302 ll.11-13, 306 ll.2-8. So talk about guardians ad litem and court approval suggests that the district court was not relying on the coma but on Vanderhall's mild retardation. If so, the district court ruled without evidence.[3]

The ruling prejudices Wilson and Ford. They do not care whether the offer was initially authorized or later ratified. Their concern is maintaining the settlement that the parties reached without court approval in the suit that Vanderhall brought against them without a guardian. JA 22-42,149-153. If Vanderhall is as incapacitated as the district court ruled, this is void because the failure to appoint a guardian when one is required voids a judgment. *South Carolina Dep't of Social Services v. McDow*, 276 S.C. 509, 511, 280 S.E.2d 208, 209 (1981).

To protect himself, Vanderhall has conditionally moved the state court to set aside the tort settlement, and appoint a guardian ad litem to pursue Wilson and Ford, if the district court's ruling on incapacity is affirmed. State Farm, in defending its assets, has again risked Wilson's and Ford's personal assets.

But the district court's ruling should be reversed. The mentally impaired enjoy the capacity to contract unless the impairment is so severe that they are incapable

---

[3]Vanderhall's counsel is ethically obligated to maintain a normal attorney-client relationship with him unless counsel reasonably believes that Vanderhall can not adequately act in his own interest. Ethical Rule 1.14, Rule 407, SCACR. There is no evidence that his mild retardation is this bad.

of understanding the nature and consequences of the act. *In re Nightingale's Estate*, 182 S.C. 527, 189 S.E. 890, 895-896 (1937). Juries normally decide whether one is this impaired. *See South Carolina Federal Credit Union v. Higgins*, 394 S.C. 189, 194-195, 714 S.E.2d 550, 552-553 (2011)(reversing a directed verdict based on a party's incapacity to contract because the evidence presented a jury issue). In this case, however, there is no evidence that Vanderhall's mild retardation is this bad.

No adjudication on competency was submitted. No medical evidence was submitted. And while Vanderhall raised his mental condition, to explain why his mother has always acted as his guardian, he never suggested that he is unable to make decisions for himself. JA 286, 291-292. His mother testified that he can make decisions for himself and that the crash did not ultimately worsen his mental condition. JA 302 ll.7-10, 305 ll.12-16.

Before the crash, Vanderhall also had a steady, seven-year long employment contract. JA 303 ll.11-14, 304 ll.19-24. After the crash, Vanderhall sued Wilson and Ford in his name alone and executed a $7 million settlement contract with them in his name alone—without court approval and without anyone suggesting that he needed court approval. JA 22-42, 149-153. Counsel that State Farm hired for Wilson and Ford never questioned Vanderhall's capacity to covenant not to execute against Wilson's and Ford's personal assets.

11

Vanderhall then sued State Farm in his name alone under the assignment that he contracted for in his name alone. JA 14-21, 39-42. When State Farm answered, it waived any issue about Vanderhall's capacity to sue by not challenging it. JA 52-56. *See* Rule 9(a)(2), FRCP (requiring defendants to specifically deny a plaintiff's capacity to sue). Beyond that, it relied on Vanderhall's ability to contract not to execute against Wilson's and Ford's personal assets. JA 55 ¶ 30.[4]

So the district court erred by resolving the issue against Vanderhall, the nonmovant. This is at least a jury issue.

### 2. A jury could find that Vanderhall created an implied agency.

In fairness to the district court, Vanderhall may be misreading the summary-judgment order. Instead of the mild retardation, the district court could have been relying on the temporary coma and just got the time line wrong. If so, the jury could find that Vanderhall created a preexisting agency with his mother that survived his temporary incapacity.

South Carolina law recognizes implied agencies. "The relationship of agency need not depend upon express appointment and acceptance, but may be, and

---

[4]State Farm argued that the covenant not to execute precludes a bad faith claim. It is wrong. *See Fowler v. Hunt*, 388 S.C. 355, 362-363, 697 S.E.2d 531, 534-535 (2010)(holding that an assignee may proceed against an insurance company after he or she covenants not to execute against the insured's personal assets). The summary-judgment order does not rely on this ground. JA 468-476.

frequently is, implied from words and conduct of the parties and the circumstances of the particular case." *City of Greenville v. Washington Am. League Baseball Club*, 205 S.C. 495, 32 S.E.2d 777, 781 (1945). So an implied agency may occur when one family member hires counsel for another. *Bankers Trust of South Carolina v. Bruce*, 283 S.C. 408, 423, 323 S.E.2d 523, 532 (Ct. App. 1984). And if "*any* facts giv[e] rise to an inference of an agency relationship, the issue is for the jury." *Citizens Sav. Bank, F.S.B. v. Verex Assur., Inc.*, 883 F.2d 299, 301 (4th Cir. 1989)(emphasis in original, applying SC law).

Applying these principles, Vanderhall has always lived at home with his mother. She has always acted as his guardian and has always handled his finances, including his Social Security benefits. JA 301 ll.14-15, 302 ll.11-15, 302 ll.21-23, 303 ll.9-10, 325 ll.6-7, 325 l.22 - 326 l.12, 331 ll.19-23. He trusts her decisions for him and that she acts in his best interests. JA 331 l.24 - 332 l.8. These facts at least create an inference of an agency that existed before the crash and the coma.

Once this agency was created, Vanderhall's temporary coma did not interrupt his mother's actual authority. The *Restatement (Third) of Agency* provides that a principal's temporary incapacity does not terminate his or her agent's actual authority. The termination is effective only when the agent or third party has notice that the principal's loss of capacity is permanent or that the principal has been adjudicated to lack capacity. *Restatement (Third) of Agency* § 3.08 (1).

Absent an adjudication, a principal, after regaining capacity, may not disaffirm transactions that the agent took during the temporary incapacity that were within the scope of the agent's actual authority. *Id.,* comment b. Statutes creating durable powers of attorney supplement this common law, not preempt it. *Id.*

Any incapacity then ended when Vanderhall's temporary coma ended around August 28, 2011. JA 302 ll.11-13, 306 ll.2-8. So he was conscious when State Farm later sent its counteroffer on September 1, 2011. JA 219. After that, Vanderhall and his mother discussed the accident and the issues about her hiring an attorney for him. JA 306 l.22 - 307 l.16. He told her that he wanted to sue. JA 315 ll.11-15. It was only then, after Vanderhall regained consciousness and told his mother that he wanted to sue, that the counteroffer was declined. JA 314 ll.8-14. Had State Farm instead sent a check and a covenant not to execute on September 1, 2011, it would have been accepted and Wilson's and Ford's personal exposure would have ended—at a time when Vanderhall had already regained consciousness and was thus fully capable of enjoying his and his mother's implied agency. JA 313 ll.15-18, 316 ll.6-9.

The South Carolina Supreme Court confronted a similar situation when the injured party's temporary incapacity was his age. In *Tyger River,* the insurance company defended its failure to settle by pointing to the injured party's minority. The Court held that the point was without merit because the child's minority did

14

not influence the company's failure to settle, the company knew how to get court approval to settle with minors, and because the child came of age before he sued the company for bad faith. *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E.2d 346, 349 (1933).

All three *Tyger River* factors are present here. State Farm rejected the offer to add conditions, not because Vanderhall was incapacitated. It also knows how to get court approval to settle, if court approval was necessary. And Vanderhall's incapacity ended long before he sued State Farm. So like *Tyger River*, State Farm's reliance on a temporary incapacity is without merit.

### 3. A jury could find that Vanderhall ratified his attorney's efforts.

The district court at one point seemed to agree that Vanderhall regained legal capacity once he came out of the coma, by suggesting that he could have renounced a settlement had State Farm accepted the offer. JA 473 n. 2. The capacity to renounce a settlement includes the capacity to ratify the offer and accept the settlement. When Vanderhall pressed ratification below, State Farm agreed, "It was entirely his option whether or not to ratify it." JA 284, 292, 408.

State Farm is right about Vanderhall's ability to ratify. In South Carolina, clients may authorize their attorney's acts retroactively. *Foxworth v. Murchison Nat'l Bank*, 136 S.C. 458, 134 S.E. 428, 431-432 (1926). And the decision to ratify was Vanderhall's entirely. Had State Farm accepted the offer, it could not renege.

15

Only the mentally infirm, or their guardians and representatives, may avoid the mentally infirm's contracts. The other party is bound. *See Palmer v. Littz Mut. Ins. Co.*, 113 F. Supp. 857, 858 (D.S.C. 1953)(holding that a contract with the insane is voidable only by the insane and that the other party is bound).

A ratification occurs unless a client disaffirms his or her attorney's acts within a reasonable time after learning of them. *Foxworth*, 134 S.E. at 431-432; *see also United States v. Manny*, 645 F.2d 163, 166-169 (2d Cir. 1981)(acts taken during a principal's coma are binding unless the principal disaffirms); *Trepanier v. Bankers Life and Cas. Co.*, 167 Vt. 590, 591-592, 706 A.2d 943, 944 (1997)(a wife's acceptance of an insurance contract for her husband during his coma was binding because he did not disaffirm). This is normally a jury issue. *See Miller v. Premier Corp.*, 608 F.2d 973, 980 (4th Cir. 1979)(applying SC law and holding that the jury could find a ratification by silence).

Ratification is a jury issue here. Vanderhall told his mother that he wanted to sue after they discussed the decision to hire an attorney for him. JA 306 l.22 - 307 l.16, 315 ll.11-15. Vanderhall's law firm then filed the tort suit for him about a month after he regained consciousness, prosecuted his tort suit for over a year, got a confessed judgment for $7 million, got an assignment of rights that allowed him to sue State Farm for rejecting the offer, and then sued State Farm for rejecting the offer. JA 14-42, 149-153, 302 ll.11-13, 306 ll.2-8. Throughout these years,

16

Vanderhall never disaffirmed his attorney-client relationship, renounced the settlement offer, or expressed dissatisfaction with anything that his attorney has done for him. He testified that he relies on and trusts his attorney's decisions. JA 329 ll.3-5, 330 ll.13-19, 331 l.24 - 332 l.8.

Lastly, ratifying the attorney-client relationship ratifies counsel's attempt to settle. In South Carolina, "It is a long-standing and well-settled rule that an attorney may settle litigation on behalf of his client and that the client is bound by his attorney's settlement actions." *Motley v. Williams*, 374 S.C. 107, 111, 647 S.E.2d 244, 246 (Ct. App. 2007). So all this creates a jury issue on whether Vanderhall authorized his attorney's settlement efforts retroactively.

## II. The jury must determine if State Farm acted unreasonably or in bad faith.

South Carolina law next requires insurance companies to evaluate third-party settlement offers reasonably and in good faith. *Tyger River*, 170 S.E.2d at 348; S.C. Code Ann. § 38-59-20(2-5, 8). Juries normally decide whether this duty was breached. *See*, *e.g.*, *State Farm Fire and Cas. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990)(applying SC law and upholding the denial of a jnov on whether State Farm acted in bad faith); *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983)(same).

The district court nevertheless determined for itself that State Farm had a reasonable basis to reject the offer—without crediting Vanderhall's contrary testimony. JA 285, 292-295, 473-475. This is error.

### 1. The jury could find that State Farm put its interests first.

Insurers act in bad faith when they put their interests ahead of the insureds. They must sacrifice their own interests completely. *Tyger River*, 170 S.E.2d at 348.

The jury could find that State Farm breached this duty by trying to protect itself from the Medicare Secondary Payor Act. The Act gives Medicare a direct, statutory right of action against automobile liability insurers to recover the amounts that Medicare pays to the tort victims. 42 U.S.C. §§ 1395y (b)(2)(A)(ii) and 1395y(b)(2)(B)(ii)-(iii); 42 C.F.R. §§ 411.11 and 411.24(e). After payment, liability insurers are likewise obligated to protect Medicare's lien by reimbursing Medicare if the payee does not. 42 C.F.R. 411.24(i)(1). Vanderhall's experts opine that State Farm acted unreasonably and in bad faith by requiring Vanderhall to protect State Farm from these liens and statutory rights of recovery—that apply only to State Farm and not Wilson or Ford. JA 69 ¶ 22, 71 ¶ 26, 72, 83, 365 l.19 - 366 l.11, 367 ll.13-24, 372 ll.19 - 375 l.12; 392 ll.2-13, 393 ll.4-16.

18

The district court described this benefit to State Farm as "minimal" and ruled that the offer's rejection was reasonably necessary to protect Wilson and Ford from other "potential liens" and "potential third party claims." JA 474-475. But the court was forced to rely on potentialities because the only lien or statutory right of recovery that applies are those Medicare has against State Farm. The adjuster who counteroffered added the conditions without determining that a lien or statutory right applies to Wilson or Ford. JA 342 ll.21-25. To this day, State Farm has never identified a lien or statutory right that applies to Wilson or Ford. State Farm also no longer adds these terms when settling policy-limit cases, thus impeaching the idea that the terms were ever reasonably necessary to protect Wilson or Ford. JA 349 l.23 - 350 l.5, 353 l.24 - 354 l.12.

So a jury could agree with Vanderhall's experts that State Farm acted unreasonably and in bad faith when it countered with terms that protected only it and protected Wilson and Ford only potentially. The district court impermissibly weighed evidence or judged credibility when it ruled otherwise.

The district court also described the lien and statutory-rights terms as standard and customary in South Carolina. JA 470, 474. The state court judge, however, found that adding these terms was objectionable enough to constitute a rejection. JA 43-47. State Farm also never relied on local custom when it rejected the offer; the adjuster could not say why he added the conditions. JA 345 ll.16-18.

19

South Carolina law further forbids insurance companies from setting their own standards. *See Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 158, 345 S.E.2d 711, 713 (1986)(rejecting an insurer's attempt to use its own investigation as a reasonable basis for its actions). Again, the law instead requires insurers to sacrifice their interests completely. *Tyger River*, 170 S.E.2d at 348. Vanderhall's experts opine that State Farm breached this basic principle. JA 69-72, 78-84.

The district court next observed that Vanderhall accepted similar lien and statutory-rights conditions when he ultimately settled with Wilson and Ford. JA 474-475. But Vanderhall only protected Wilson and Ford; he never agreed to protect State Farm. JA 34 ¶ 6. This settlement was also part of a $7 million deal and not a $25,000 one. Vanderhall's experts opine that the $6,725,000 disparity makes a difference. JA 370 ll.14-19, 383 l.15 - 384 l.4.

The court lastly observed that the counteroffer protected Wilson and Ford from future-damages claims. JA 474. While true, Vanderhall never objected to protecting Wilson and Ford. He objected to State Farm requiring that he protect State Farm. When the dispute over the offer first arose, Vanderhall told the state court that the objectionable terms were the other terms concerning liens, assignments, and statutory rights of recovery. JA 95, 97. The state court likewise stated that the terms that Vanderhall found objectionable were the other terms about liens, assignments, and statutory rights of recovery. JA 44. Again, the lien

20

and statutory-rights terms only protect State Farm. JA 71 ¶ 26, 83, 365 l.19 - 366 l.11, 367 ll.13-24, 372 ll.19 - 375 l.12; 392 ll.2-13, 393 ll.4-16. Vanderhall's experts focused on the added terms that only protect State Farm when they opined that State Farm rejected the offer unreasonably and in bad faith.

### 2. The jury could fault State Farm for not consulting its insureds.

Insurers also act in bad faith in processing a claim when they make decisions that are knowingly uninformed. *See Am. Fire & Cas. Co. v. Johnson*, 332 S.C. 307, 311, 504 S.E.2d 356, 358 (Ct. App. 1998)(defining "bad faith"). State Farm misbehaved this way too.

Vanderhall's experts opine that State Farm acted unreasonably and in bad faith when it rejected the offer to protect Wilson's and Ford's personal assets without asking Wilson and Ford. JA 71 ¶ 28, 72, 81, 351 l.5 - 352 l.7, 359 l.19 - 360 l.1, 361 l.20 - 362 l.17, 376 l.21 - 377 l.8. Setcavage added that State Farm had time to get Wilson and Ford independent counsel, and that they would have accepted the offer had independent counsel been brought in. JA 81, 363 ll.13-17, 364 ll.14-19, 378 ll.6-15. From there, a jury could find that State Farm would have acceded to Wilson's and Ford's desire to accept the offer and avoid a lawsuit. After all, State Farm now settles policy-limit claims without the additional terms. JA 349 l.23 - 350 l.5, 353 l.24 - 354 l.12.

These opinions were pressed in the district court. JA 285, 295. From them, a jury could find that State Farm acted unreasonably and in bad faith even if the rejection letter gave Wilson and Ford illusory protection against potential liens and statutory rights that do not exist against them. Wilson and Ford were the ones to decide whether protection against non-existent potentialities was worth risking an excess judgment against them personally. But because State Farm never told Wilson or Ford about the pre-suit offer, they got hit with a $7 million lawsuit and were forced to ponder, for over a year, whether they would lose most everything they own.

## Conclusion

State Farm had a chance to protect Wilson's and Ford's personal assets after it confirmed that their personal assets were at risk. Yet it rejected the offer to settle for the policy limits without asking Wilson or Ford and countered with terms that do not protect them but protect only State Farm. Ample evidence allows a jury to hold State Farm accountable for treating Wilson and Ford so shabbily.

This Court recently reversed a summary-judgment order for failing to credit the nonmovant's evidence. *Jacobs*, 780 F.3d at 568-570. This summary-judgment order must likewise be reversed and the case remanded for the jury to resolve the genuine issues of material fact.

## Request for Oral Argument

Vanderhall requests oral argument to answer questions the Court may have.

Respectfully submitted,

/s/Robert N. Hill

LAW OFFICE OF ROBERT HILL
P.O. Box 1323
Lexington, SC 29071
(803) 520-4370
attorneyhill@twc.com

William P. Hatfield
HATFIELD TEMPLE, LLP
P.O. Box 1770
Florence, SC 29503-1770
(843) 662-5000
wphatfield@htlawsc.com

*Attorneys for the Plaintiff-Appellant*
*Jefferey L. Vanderhall*

# Certificate of Compliance

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      28.1(e)(2) or 32(a)(7)(B) because:

      [ X ] this brief contains [*5,289*] words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      [    ] this brief uses a monospaced typeface and contains [*state the number
      of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
      32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      [ X ] this brief has been prepared in a proportionally spaced typeface using
      [*Corel WordPerfect*] in [*14pt Times New Roman*]; *or*

      [    ] this brief has been prepared in a monospaced typeface using [*state
      name and version of word processing program*] with [*state number of
      characters per inch and name of type style*].

Dated: June 10, 2015                          /s/ Robert N. Hill
                                              *Counsel for Appellant*

## Certificate of Filing and Service

I hereby certify that on this 10th day of June, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Charles R. Norris
> Robert W. Whelan
> NELSON MULLINS RILEY &
>   SCARBOROUGH, LLP
> Post Office Box 1806
> Charleston, South Carolina  29402
> (843) 720-4303
>
> *Counsel for Appellee*

I further certify that on this 10th day of June, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ Robert N. Hill
*Counsel for Appellant*